LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand, Esq.
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034
(856) 482-7100
Attorney for Plaintiff
WH:4166

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

DANIEL CURCIO,

        Plaintiff,

        v.

COLLINGSWOOD BOARD OF
EDUCATION, JAMES H. BATHHURST,
JOHN DOES 1-10 (fictitious individuals
and entities),

        Defendant(s)

_____

CIVIL ACTION

Docket No.:  04-cv-5100

**NOTICE OF MOTION FOR
PARTIAL  SUMMARY  JUDGMENT**

TO:   Lisa Grosskreutz, Esq.
      Parker McCay
      7001 Lincoln Drive West
      3 Greentree Center
      Marlton, NJ 08053-3292

     PLEASE TAKE NOTICE that William B. Hildebrand, Esq., attorney for the Plaintiff

Daniel Curcio, shall move before the Honorable Judge Jerome B. Simandle, U.S.D.J.,

Mitchell H. Cohen United States Court House, 1 John F. Gerry Plaza, Camden, NJ, for entry

of an order of partial summary judgement in his favor and against Defendants in this case.

     PLEASE TAKE FURTHER NOTICE that Plaintiff shall rely on the Brief, L.Civ.R.

56.1 Statement of Undisputed Facts, and Affidavit of William B. Hildebrand, Esq. submitted

herewith.

PLEASE TAKE FURTHER NOTICE that a proposed form of Order is submitted

herewith.

PLEASE TAKE FURTHER NOTICE that Plaintiff hereby requests oral argument.

Law Offices of William B. Hildebrand L.L.C.


By:___ s/ William B. Hildebrand_____

Dated:     11/17/05                      William B. Hildebrand

LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand, Esq.
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034
(856) 482-7100
Attorney for Plaintiff
WH:4166

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

DANIEL CURCIO,

        Plaintiff,

        v.

COLLINGSWOOD BOARD OF
EDUCATION, JAMES H. BATHHURST,
JOHN DOES 1-10 (fictitious individuals
and entities),

        Defendant(s)

_____

CIVIL ACTION

Docket No.:   04-cv-5100

**ORDER**

        This matter having been presented to the Court, and the Court having reviewed the moving papers and any opposition thereto, is hereby ORDERED that Plaintiff's Motion for Partial Summary Judgment is GRANTED.

        Judgment is hereby entered in Plaintiff's favor and against Defendants Collingswood Board of Education and James H. Bathurst for liability only on the First Count of Plaintiff's Amended Complaint.

        SO ORDERED.

Dated: _____   _____

                                                     J.

LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand, Esq.
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034
(856) 482-7100
Attorney for Plaintiff
WH:4166

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

DANIEL CURCIO,

        Plaintiff,

        v.

COLLINGSWOOD BOARD OF
EDUCATION, JAMES H. BATHHURST,
JOHN DOES 1-10 (fictitious individuals
and entities),

        Defendant(s)

_____

        CIVIL ACTION

        Docket No.:  04-cv-5100

## L. Civ. R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff hereby submits the following statement of Undisputed Material Facts in support of his Motion for Partial Summary Judgment:

1.  Plaintiff, Daniel Curcio, is an individual who resides in Philadelphia, PA. (Plaintiff's deposition p. 1).

2.  Defendant, Collingswood Board of Education, is a local School Board, with an office and principal place of business located at 200 Lees Ave, Collingswood, NJ 08108, and is the legal entity which employed Plaintiff at the time of his discharge. (Defendants'

Answer to Plaintiff's Amended Complaint, para. 5).

3.   Defendant, Collingswood Board of Education ("the School Board") is an "employer" within the meaning of the FMLA and the LAD.

4.   Defendant, James H. Bathhurst is an individual who worked as Superintendent of Schools for the School Board during Plaintiff's employment there. (Defendants' Answer to Plaintiff's Amended Complaint, para. 7).

5.   Plaintiff began his employment with the School Board in September, 2000, as a High School Spanish Teacher. (Defendants' Answer to Plaintiff's Amended Complaint, para. 8).

6.   Plaintiff performed his teaching duties satisfactorily and the School Board renewed his contract for the 2001-02 and 2002-03 school years. (C. Earling Jr.'s deposition, pp. 10-14).

7.   During the Fall of 2002, Plaintiff began experiencing stress-induced dysphagia (difficulty swallowing) and  panic attacks.   On November 21, 2002, Plaintiff suffered a panic attack and dysphagia while eating dinner.  He was treated at the Crisis Response Center of Pennsylvania Hospital and released.

8.   Plaintiff's last day in the classroom was December 20, 2002.   (Defendants' Answer to Plaintiff's Request for Admissions, No. 5)

9.   On Christmas Eve, December 24, 2002, Plaintiff suffered three panic attacks.  As a result, he was treated in the Emergency Room of Kennedy Memorial Hospital in Stratford and released.

10.  On December 31, 2002, William N. Duffy, M.D. provided Plaintiff with a note, excusing him from work beginning 1/2/03 for at least four (4) weeks due to illness. Defendants received a copy of this note from Plaintiff in early January.  (Bathurst deposition, p. 47, lines 6-7; Exhibit Bathurst 1).

11.  On January 2, 2003, Plaintiff wrote to Mr. Bathurst, advising him that he was suffering from severe problems due to anxiety.  Plaintiff also advised that he would be unable to immediately return to work and requested temporary Worker's Compensation benefits until he returned.  (Bathurst Exhibit 1).

12.  The School Board did not require Plaintiff to fill out any forms or provide them with any other paperwork prior to his absence in January and February, 2003.  (Defendants' Answers to Plaintiff's Request for Admissions, para. 14)

13.  Prior to January, 2003, Defendant did not ask Plaintiff to provide any additional documentation to support his request for a leave of absence due to illness other than a doctor's note.   (Defendants' Answers to Plaintiff's Request for Admissions, para. 15)

14.  The School Board's normal policy and practice for teachers returning to work from FMLA or extended sick leave is simply to require a doctor's note, clearing them to return to work without restrictions.  (Bathurst deposition, pp. 30-32; C. Earling deposition, p. 10).

15.  A simple doctor's note, however, was not sufficient for Mr. Curcio.  Rather, on January 31, 2003, the School Board's attorney wrote a letter to Plaintiff's attorney, stating that Plaintiff would not be permitted to return to work "on that date or any other date" unless

he provided the Superintendent with "written reports from his treating doctors setting forth diagnoses, prognoses, and medical opinions regarding his fitness for duty." (Bathurst Exhibit 2).

16.   Prior to January, 2003, Defendant did not notify Plaintiff that he would be required to provide any medical documentation other than a doctor's note as a condition for returning to work following a leave of absence due to illness. (Defendants Answers to Plaintiff's Request for Admissions para. 8).

17. On February 12, 2003, the School Board's attorney wrote to Plaintiff's attorney, reiterating that Plaintiff would not be permitted to return to work without first providing the medical documentation referred to in the attorney's January 31, 2003 correspondence. (Defendants Answers to Plaintiff's Request for Admissions para. 10).

18. On February 19, 2003, Plaintiff's supervisor, Jack McMullin, opened an email from Plaintiff, indicating that his doctor wrote him a note clearing him to return to work on February 17, 2003. (Defendants' Answers to Plaintiff's Request for Admissions, para. 9).

19.   On February 19, 2003, Plaintiff attended a meeting with the School Board's Affirmative Action Officer, Jack McMullin and Mr. Bathurst.  During the meeting, Mr. Bathurst advised Plaintiff that they would not permit him to return to work unless he provided all the medical documentation requested in their attorney's January 31, 2003 correspondence, and that a doctor's note was not sufficient.  (Defendants' Answers to Plaintiff's Request for Admissions, para. 12).

Law Offices of William B. Hildebrand L.L.C.


By:___s/ William B. Hildebrand_____

Dated:     11/17/05                William B. Hildebrand

LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand, Esq.
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034
(856) 482-7100
Attorney for Plaintiff
WH:4166

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

DANIEL CURCIO,

      Plaintiff,

      v.

COLLINGSWOOD BOARD OF
EDUCATION, JAMES H. BATHHURST,
JOHN DOES 1-10 (fictitious individuals
and entities),

      Defendant(s)

_____

CIVIL ACTION

Docket No.:  04-cv-5100

**AFFIDAVIT OF COUNSEL**

STATE OF NEW JERSEY    :
                   : ss.
COUNTY OF CAMDEN     :

WILLIAM B. HILDEBRAND, of full age,  hereby deposes and says:

1. I am an attorney at law of the State of New Jersey and counsel for Plaintiff, Daniel

Curcio, in this case.  As such, I have personal knowledge of the facts stated herein and make

this Affidavit in support of Plaintiff's Motion for Partial Summary Judgment.

2. Attached hereto as Exhibit "A" is a true and correct copy of Plaintiff's Amended

Complaint in this case.

3.  Attached hereto as Exhibit "B" is a true and correct copy of Defendants' Answer to Plaintiff's Amended Complaint.

4.  Attached hereto as Exhibit "C" is a copy of  pertinent portions of Plaintiff's deposition.

5.  Attached hereto as Exhibit "D" is a copy of  pertinent portions of James H. Bathurst's deposition, together with Exhibits 1 & 2.

6.  Attached hereto as Exhibit "E" is a copy of  pertinent portions of C. Earling's deposition.

7.  Attached hereto as Exhibit "F" is a true and correct copy of Defendants' Answer to Plaintiff's Request for Admissions.

8.  Attached hereto as Exhibit "G" is a true and correct copy of a note from William M. Duffy, MD, clearing Plaintiff to return to work on 2/17/03, without restrictions.

By:__s/ William B. Hildebrand_____

Dated:     11/17/05                                        William B. Hildebrand

Sworn to and subscribed

before me this          day

of                     , 2005.

_____

LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand, Esq.
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034
(856) 482-7100
Attorney for Plaintiff
WH:4166

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

DANIEL CURCIO,

       Plaintiff,

       v.

COLLINGSWOOD BOARD OF
EDUCATION, JAMES H. BATHHURST,
JOHN DOES 1-10 (fictitious individuals
and entities),

       Defendant(s)

_____

CIVIL ACTION

Docket No.:  04-cv-5100

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

                          Law Offices of William B. Hildebrand L.L.C.
                          1040 Kings Highway North
                          Suite 601
                          Cherry Hill, NJ 08034
                          856-482-7100
                          Attorneys for Plaintiff

On the Brief:
William B. Hildebrand

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES..........................................................ii

STATEMENT OF FACTS...........................................................1

LEGAL ARGUMENT..................................................................4

_____

i

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Albert v. Runyon,* 6 F.Supp.2d 57 (D. Mass. 1998)................................9, 10

*Bachelder v. America West Airlines, Inc.*, 259
F.3d 1112 (9th Cir. 2001)........................................................................5, 7

*Bearley v. Friendly Ice Cream Corp.,* 322
F.Supp. 2d 563, 571 (M.D. Pa. 2004)......................................................4, 5

*Callison v. City of Philadelphia*, 2004 U.S. Dist. LEXIS 6770,
at * 11, 9 Wage & Hour Cas. 2d (BNA) 1579  (E.D. Pa. 2004)...............5

*Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843-44,
81 L.Ed.2d 694, 104 S.Ct. 2778 (1984)......................................................7

*Churchill v. Star Enterprises,* 183 F.3d 184, 192
(3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1-2)....................................4

 *Cross v. South West Recreational Industries, Inc.,*
17 F.Supp.2d 1362 (N.D. Ga. 1998)..........................................................6

*Diaz v. Ft. Wayne Foundry Corp.*, 131 F.3d 711 (7th Cir. 1997)..............6

*Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 5 (1st Cir. 1998)............7

*Harrell v. United States Postal Service,* 415 F.3d 700
(7th Cir. 2005)................................................................................9, 11

*Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159
(1st Cir. 1998)................................................................................5

*Kaylor v. Fannin Regional Hospital, Inc.*, 946 F.Supp. 988,
997 (N.D. Ga. 1996)....................................................................7

*King v. Preferred Technical Group,* 166 F.3d 887, 891
(7th Cir. 1999)................................................................................6

*Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 762
(5th Cir. 1995)................................................................................8

*Marrero v. Camden County Bd. of Social Services*,
164 F.Supp.2d 455, 463 (D.N.J. 2001)........................................5

*Michaels v. Sunoco Home Comfort Service,* 2004 U.S. Dist.
LEXIS 25152, *7 (E.D. Pa. 2004)(DuBois, J.)............................5

*Parker v. Hahnemann University Hospital,*
234 F.Supp.2d  478, 485 (D.N.J. 2002)......................................5, 6

*Peter v. Lincoln Technical Institute*, 255 F.Supp.2d 417,
 438 (E.D. Pa. 2002)......................................................................5

*Routes v. Henderson,* 58 F.Supp.2d 959 (S.D. Ind. 1999)............................9, 10

*Strickland v. Water Works and Sewer Bd. of the
City of Birmingham*, 239 F.3d 1199 (11th Cir. 2001)....................................5

*Victorelli v. Shadyside Hospital,* 128 F.3d 184,
186 (3d Cir. 1997)........................................................................4

*Viereck v. City of Gloucester City*, 961 F.Supp. 703,
707, 708 (D.N.J. 1997)......................................................................7, 8

## RULES AND STATUTES

**Page**

29 U.S.C. § 2612(a)(1)(D)......................................................................4

29 U.S.C. § 2614....................................................................................4

29 U.S.C. § 2614(a)(1)(A)......................................................................4

29 U.S.C. § 2615....................................................................................5

29 U.S.C. § 2615(a)(1)...........................................................................5

29 U.S.C. § 2615(a)(2)...........................................................................5

iii

29 U.S.C. § 2654.............................................................................7

29 C.F.R. § 310 (c).........................................................................10

29 C.F.R. § 310 (e & f)....................................................................8

29 C.F.R. § 825.208.........................................................................7

29 C.F.R. § 825.208(c)......................................................................7

29 C.F.R. § 825.220(a)......................................................................7

29 C.F.R. § 825.220(b)......................................................................7

29 C.F.R. § 825.310(c)......................................................................8

S. Rep. No. 103-3 at 4, 103d Cong., 2d Sess. (1993)..............................4

## STATEMENT OF FACTS

Plaintiff, Daniel Curcio, is an individual who resides in Philadelphia, PA. (Plaintiff's deposition p. 1).  Defendant, Collingswood Board of Education ("the School Board") is a local School Board, with an office and principal place of business located at 200 Lees Ave, Collingswood, NJ 08108, and is the legal entity which employed Plaintiff at the time of his discharge. (Defendants' Answer to Plaintiff's Amended Complaint, para. 5).  Defendant, James H. Bathhurst is an individual who worked as Superintendent of Schools for the School Board during Plaintiff's employment there.  (Defendants' Answer to Plaintiff's Amended Complaint, para. 7).

Plaintiff began his employment with the School Board in September, 2000, as a High School Spanish Teacher. (Defendants' Answer to Plaintiff's Amended Complaint, para. 8).  Plaintiff performed his teaching duties satisfactorily and the School Board renewed his contract for the 2001-02 and 2002-03 school years.  (C. Earling Jr.'s deposition, pp. 10-14).

During the Fall of 2002, Plaintiff began experiencing stress-induced dysphagia (difficulty swallowing) and  panic attacks.   On November 21, 2002, Plaintiff suffered a panic attack and dysphagia while eating dinner.  He was treated at the Crisis Response Center of Pennsylvania Hospital and released.  On Christmas Eve, December 24, 2002, Plaintiff suffered three panic attacks in a row and was treated in the Emergency Room of Kennedy Memorial Hospital in Stratford and released.

Plaintiff's last day in the classroom was December 20, 2002.  (Defendants' Answer

1

to Plaintiff's Request for Admissions, No. 5).

On December 31, 2002, William N. Duffy, M.D. provided Plaintiff with a note, excusing him from work beginning 1/2/03 for at least four (4) weeks due to illness. Defendants received a copy of this note from Plaintiff in early January. (Bathurst deposition, p. 47, lines 6-7; Exhibit Bathurst 1).

On January 2, 2003, Plaintiff wrote to Mr. Bathurst, advising him that he was suffering severe problems due to anxiety. Plaintiff also advised that he would be unable to immediately return to work after the Break and requested temporary Worker's Compensation benefits until he returned. (Bathurst Exhibit 1).

The School Board did not require Plaintiff to fill out any forms or provide them with any other paperwork in connection with his absence in January and February, 2003. (Defendants' Answers to Plaintiff's Request for Admissions, para. 14). Prior to January, 2003, the School Board also did not notify Plaintiff that he would be required to provide any medical documentation other than a doctor's note as a condition for returning to work following a leave of absence due to illness. (Defendants Answers to Plaintiff's Request for Admissions para. 8).

On January 31, 2003, the School Board's attorney wrote a letter to Plaintiff's attorney, stating that Plaintiff would not be permitted to return to work "on that date or any other date" unless he provided the Superintendent with "written reports from his treating doctors setting forth diagnoses, prognoses, and medical opinions regarding his fitness for

duty." (Bathurst Exhibit 2).  On February 12, 2003, the School Board's attorney wrote to Plaintiff's attorney, reiterating that Plaintiff would not be permitted to return to work without first providing the medical documentation referred to in the attorney's January 31, 2003 correspondence.  (Defendants Answers to Plaintiff's Request for Admissions para. 10).

On February 19, 2003, Plaintiff's supervisor, Jack McMullin, opened an email from Plaintiff, indicating that his doctor wrote him a note clearing him to return to work on February 17, 2003.  (Defendants' Answers to Plaintiff's Request for Admissions, para. 9).

On February 19, 2003, Plaintiff attended a meeting with the School Board's Affirmative Action Officer, Jack McMullin and Mr. Bathurst.  During the meeting, Mr. Bathurst advised Plaintiff that they would not permit him to return to work unless he provided all the medical documentation requested in their attorney's January 31, 2003 correspondence, and that a doctor's note was not sufficient.  (Defendants' Answers to Plaintiff's Request for Admissions, para. 12).

On October 19, 2004, Plaintiff initiated this action by filing a Complaint alleging, *inter alia*, that by failing and refusing to permit Plaintiff to return to work following the cessation of his FMLA-protected leave, Defendants violated Plaintiff's rights under the FMLA.  (Complaint, para. 33).

## LEGAL ARGUMENT

Congress enacted the FMLA in 1993 to provide relief for workers whose medical circumstances require them to take time off from work in excess of what their employers are willing or able to provide.  *Victorelli v. Shadyside Hospital,* 128 F.3d 184, 186 (3d Cir. 1997).  The Act is intended "to balance the demands of the workplace with the needs of families ... by establishing a minimum labor standard of leave" that lets employees "take reasonable leave for medical reasons." *Churchill v. Star Enterprises,* 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1-2)).  Congress intended that the Act would establish "a minimum labor standard for leave," in the tradition of statutes such as "the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment."  S. Rep. No. 103-3 at 4, 103d Cong., 2d Sess. (1993).

The FMLA requires employers to give eligible employees "a total of twelve workweeks of leave during any twelve month period" if they have a "serious health condition that makes [them] unable to perform the functions of [their] position." 29 U.S.C. § 2612(a)(1)(D).  Employees who take FMLA leave are entitled to important protections, including the fact that their leave cannot be denied, their health benefits must be maintained, and their job is protected.  29 U.S.C. § 2614.   Upon their return from leave, employees must be restored to the same, or an equivalent position, 29 U.S.C. § 2614(a)(1)(A).

To protect these rights, the FMLA creates two distinct causes of action.  See *Bearley*

4

*v. Friendly Ice Cream Corp.,* 322 F.Supp.2d 563, 571 (M.D. Pa. 2004); *Peter v. Lincoln Technical Institute*, 255 F.Supp.2d 417, 438 (E.D. Pa. 2002) (citing *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001) and *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199 (11th Cir. 2001)).  First, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided" by that statute.  29 U.S.C. § 2615(a)(1).  Claims under this provision are typically referred to as "interference" claims.  See *Strickland*, 239 F.3d at 1207 n. 9; *Michaels v. Sunoco Home Comfort Service,* 2004 U.S. Dist. LEXIS 25152, *7 (E.D. Pa. 2004)(DuBois, J.); *Marrero v. Camden County Bd. of Social Services*, 164 F.Supp.2d 455, 463 (D.N.J. 2001).  Second, the FMLA makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [29 U.S.C. § 2615]."  29 U.S.C. § 2615(a)(2). Such claims are usually described as "discrimination" claims.  See *Strickland*, 239 F.3d at 1207 n. 9; *Marrero*, *supra*, 164 F.Supp.2d at 463.

"Interference claims are based on the prescriptive sections of the FMLA which create substantive rights for eligible employees.  These rights set floors for conduct by employers." *Callison v. City of Philadelphia*, 2004 U.S. Dist. LEXIS 6770, at * 11, 9 Wage & Hour Cas. 2d (BNA) 1579 (E.D. Pa. 2004) (citing *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)).   Interference claims are "not about discrimination;"  therefore, a *McDonnell-Douglas* shifting burden analysis is not required.  *Id*. (citing *Parker v.*

*Hahnemann University Hospital,* 234 F.Supp.2d  478, 485 (D.N.J. 2002).   Rather, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA."  *Hodgens*, *supra,* 144 F.3d at 159 n. 4.

In *Diaz v. Ft. Wayne Foundry Corp.*, 131 F.3d 711 (7th Cir. 1997), the Court explained the difference between discrimination claims and interference claims as follows:

> "The question in a discrimination case is whether the employer treated one employee worse than another on account of something (race, religion, sex, age, etc.) that a statute makes irrelevant.  A firm may treat all employees equally poorly without discriminating.  A statute such as the FMLA, however, creates substantive rights.  A firm *must* honor statutory entitlements; when one employee sues, the firm may not defend by saying that it treated all employees identically."

*Id.*, 131 F.3d at 712 (emphasis in original).

Unlike discrimination claims, courts evaluate interference claims under a strict liability standard, in which the employer's subjective intent is irrelevant.  To prevail on an FMLA interference claim, a plaintiff need only establish that the employer denied her a benefit to which she was entitled under the statute.  See, e.g., *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir. 1999) (when an employee alleges a deprivation of the Act's substantive guarantees, the employee need only demonstrate entitlement to the benefit--the employer's intent is irrelevant); *Hodgens, supra,* 144 F.3d at 159 ("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied regardless of the intent of the employer."); *Cross v. South West Recreational Industries, Inc.,* 17 F.Supp.2d 1362 (N.D. Ga. 1998) (holding that the FMLA imposes strict

6

liability upon employers who deny FMLA benefits to a qualifying employee); *Viereck v. City of Gloucester City*, 961 F.Supp. 703, 708 (D.N.J. 1997) (interpreting § 2615(a)(1) as imposing a strict liability standard); *Kaylor v. Fannin Regional Hospital, Inc.*, 946 F.Supp. 988, 997 (N.D. Ga. 1996) (holding that Congress used the words "shall be unlawful" in § 2615(a)(1) in order to create strict liability for the denial of statutory rights).

Congress authorized the Department of Labor ("DOL") to issue implementing regulations for the FMLA.  29 U.S.C. § 2654.  These regulations are entitled to deference under *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843-44, 81 L.Ed.2d 694, 104 S.Ct. 2778 (1984).  *Bachelder*, *supra,* 259 F.3d at 1123 n. 9; *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 5 (1st Cir. 1998).   DOL regulations explain that "the FMLA prohibits interference with an employee's rights under the law."  29 C.F.R. § 825.220(a).  "Interference" includes "[a]ny violations of the Act or of these regulations."  29 C.F.R. § 825.220(b).

Because  Plaintiff was absent for more than three consecutive days due to a serious health condition, his absence is protected by the FMLA.  Upon cessation of that leave, he was entitled to return to the same position he held when the leave commenced.  Defendants' failure to recognize and designate Plaintiff's absence as "protected leave" is no defense.  Otherwise, an employer could avoid its statutory obligations simply by refusing to designate *any* leave as FMLA protected.  Anticipating this problem, 29 C.F.R. § 825.208 specifically states that it is the *employer's* responsibility to designate leave as FMLA-qualifying and to notify the employee of this designation.  If the employer has sufficient information to

7

designate the FMLA qualifying and fails to do so, the employee is still subject to the full protections of the Act. 29. C.F.R. § 825.208(c).  See, e.g., *Viereck v. City of Gloucester City,* 961 F.Supp. 703, 707 (D.N.J. 1997) (employee's telephone call informing her employer that she had been hospitalized and would be unable to return to work for some time due to her medical condition was sufficient notice that she had a "serious medical condition" within the meaning of the FMLA);  *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 762 (5th Cir. 1995) (stating that an employee need not expressly assert rights under the Act or even mention the FMLA to satisfy their notice obligations under the Act).

As a condition of restoring an employee to his former position, an employer may, *pursuant to a uniformly applied policy or practice*, require that he present a certification from his treating physician attesting to his ability to resume work.  "The certification ... need only be a simple statement of an employee's ability to return to work."  29 C.F.R. § 825.310(c).  The employer's doctor may contact the employee's doctor for purposes of *clarification* of the employee's fitness to work.  However, "[t]he employer may not delay the employer's return to work while contact with the health care provider is being made."  *Id.* Furthermore, an employer cannot require an employee to submit to a fitness-for-duty exam as a condition of reinstatement unless the employer has first provided the employee with written notice of this requirement.  Where (as here) there has been no such advance written notice, the employer cannot condition the employee's return to work on completion of such an exam.  29 C.F.R. § 310 (e & f).

The impact of these provisions on an employer's right to require an employee to undergo a "fitness-for-duty" as a condition of reinstatement was discussed in the following cases: *Albert v. Runyon,* 6 F.Supp.2d 57 (D. Mass. 1998); *Routes v. Henderson,* 58 F.Supp.2d 959 (S.D. Ind. 1999); and *Harrell v. United States Postal Service,* 415 F.3d 700 (7th Cir. 2005).

*Albert, supra,* involved an individual who had been employed by the U.S. Postal Service for several years. In September, 1997, she became temporarily disabled due to clinical depression, and took a leave of absence. On December 1, 1997, Albert's treating psychologist certified that she was fit to return to work. On December 17, 1997, her employer advised that the treating psychologist's letters were "inadequate to assess" her ability to work, and therefore they scheduled her for a fitness-for-duty examination, including a psychiatric evaluation. She was placed on paid administrative leave pending the results of the exam, and warned that refusal to undergo the exam could be cause for disciplinary action, including termination. Albert subsequently filed suit, requesting a permanent injunction preventing defendants from conditioning her continued employment on submission to a fitness-for-duty exam. *Id.* at 59-60.

The Court determined that her employer's insistence that Albert undergo a fitness-for-duty exam as a condition of her reinstatement was improper. In explaining the reasons for this conclusion, the Court stated:

> "The FMLA does not authorize an employer to make its own
> determination of whether an employee is fit to return from FMLA

9

leave following recovery from a serious health condition.  Rather, an employer must rely on the evaluation done by the employee's own clinician and return the employee to work without delay upon receipt of medical certification. ... Dr. Smith's letter is sufficient to satisfy the FMLA fitness-for-duty standard."

*Id.,* at 62.

The Court further noted:

"An employer with questions about the scope or adequacy of a medical certification may take advantage of the FMLA provision allowing it to contact the employee's clinician for clarification, *but may not force an employee to submit to a further examination before allowing her to return to work.  29 C.F.R. § 825.310(c).*"

*Id.,* at 63.

*Routes, supra,* likewise involved a U.S. Postal Service employee.  In October, 1995, Routes was released by two doctors to return to work following inpatient treatment for alcoholism and depression.  *Id.,* at 97.  The Postal Service argued that it could condition Routes' return on successful completion of a fitness-for-duty exam.  *Id.,* at 104.  The Court, however, disagreed, relying in large part of the analysis in *Albert, supra.*  In this regard, the Court stated:

"The FMLA leaves it in the hands of the health care provider, not the employer, 'to evaluate an employee's health condition to determine if [he or she] is sufficiently recovered to return to work.'  Thus, the employer cannot claim that 'its inability to independently assess the employee's health' justifies a FFDE.  Something more is needed, and that something must be independent of the fact that an employee took FMLA leave or the underlying medical condition from which he has recovered sufficiently to return to work."

*Routes, supra,* 58 F.Supp.2d at 998 (quoting *Albert, supra,* 6 F.Supp.2d at 69.

10

*Harrell, supra,* involved a U.S. Postal Service employee who was forced to take FMLA leave due to fatigue, stress, sleep disturbance and difficulty concentrating.  After he was absent for approximately one month, Harrell attempted to return to work.  However, his supervisor informed him that he would not be permitted to return without first undergoing a "release for work" exam by the Postal Medical Officer.  Harrell refused to be examined, contending that his employer already had sufficient medical information to permit him to return to work.  *Id.,* at 702-04.

The Postal Service claimed it could rely on its own return-to-work regulations, as incorporated in a valid collective bargaining agreement, to impose requirements that are more burdensome than what is required by the return-to-work provisions of the FMLA.  In rejecting this argument, the Court stated:

> "The Postal Service regulations ... impose a greater burden on the employee, and therefore cannot be employed, consistent with *§ 2652,* in implementing the return-to-work provisions of the FMLA. ... [N]othing in the FMLA, or its implementing regulations, forbids a more stringent fit-for-duty examination once the employee has returned from FMLA leave. ... The FMLA and its regulations simply prevent an employer, including the Postal Service, from denying a *return* to work by an employee who has been absent on FMLA leave and who presents, upon his return, the requisite certification from his physician.  If the employer has further doubts about the employee's ability to do his job, it is free to address that issue after the employee is reinstated from FMLA leave."

*Id.,* at 713-14.

The above case law and regulations conclusively establish that an employer may not delay an employee's reinstatement from FMLA leave while it seeks further information on

11

the employee's ability to work.  The employer is free to obtain this information in a number of ways: the employer's physician may contact the employee's physician for purposes of *clarifying* the employee's ability to work, or may have him examined at dates and times of its choosing.  However, what the employer *cannot* do is *delay* the employee's reinstatement pending the receipt of further information or the results of a fitness-for-duty exam.

Here, the undisputed facts conclusively establish that Plaintiff was not permitted to return to his former employment following his FMLA-protected absence unless and until he provided far more extensive medical information than was normally required of other employees.  The regulations and case law clearly establish that following his return from leave, he was entitled to immediate reinstatement, and that a simple doctor's note is all that can be required before reinstating him to his former position. By failing and refusing to reinstate Plaintiff to his former position following his return from leave, Defendants unlawfully interfered with Plaintiff's rights under the FMLA, entitling him to all damages proximately resulting therefrom.  Plaintiff is therefore entitled to partial summary judgment (liability only) on the First Count of his Amended Complaint.


By:   s/ William B. Hildebrand_____

Dated:    11/17/05                            William B. Hildebrand


12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the _17ʰ _ day of November 2005, I served a copy of the foregoing motion upon the following person(s) by:

_____        Hand delivery;

\_\_X\_\_        Electronically Filed with the Court

_____U.S. Mail (Certified/Return Receipt Requested)

TO:\_\_Lisa Grosskreutz, Esq.
        Parker McCay
        7001 Lincoln Drive West
        3 Greentree Center
        Marlton, NJ 08053-3292

        \_\_\_\_\_

                                __ s/ William B. Hildebrand_____
                                William B. Hildebrand, Esq.

13