UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DANIEL CURCIO, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil Action |
| v. | No. 04-5100 (JBS) |
| COLLINGSWOOD BOARD OF EDUCATION and JAMES H. BATHURST, | **OPINION** |
| Defendants. | |

APPEARANCES:

William B. Hildebrand, Esq.
LAW OFFICES OF WILLIAM B. HILDEBRAND
1040 Kings Highway North
Suite 601
Cherry Hill, NJ 08034
    Attorney for Plaintiff

Lisa S. Grosskreutz, Esq.
PARKER McCAY, P.A.
Three Greentree Centre
7001 Lincoln Drive West
Marlton, NJ  08034
    Attorney for Defendants Collingswood Board of Education and
    James H. Bathurst

**SIMANDLE,** District Judge:

This matter comes before the Court upon motions for partial summary judgment by Plaintiff Daniel Curcio ("Plaintiff") and Defendants Collingswood Board of Education (the "Board") and the Superintendent of Schools for the Board, James H. Bathurst ("Bathurst")(the Board and Bathurst will be referred to collectively as the "Defendants.")   Specifically, the Court will

address (1) the parties' cross-motions for partial summary judgment related to Plaintiff's claim that Defendants violated the Family Medical Leave Act ("FMLA") by refusing to allow Plaintiff to return to work after a medical leave of absence (Count I of Plaintiff's Complaint) and (2) Defendants' motion for partial summary judgment as to Plaintiff's claims of wrongful termination in violation of the Family Medical Leave Act ("FMLA") and the New Jersey Law Against Discrimination ("NJLAD") (Counts II and IV).

From September, 2000 through early 2003, Plaintiff was a non-tenured Spanish teacher at Collingswood High School in Collingswood, New Jersey.  (Pl.'s Statement of Undisputed Facts ("Pl.'s SUF") ¶ 5.)  Plaintiff was employed by the Board and the Superintendent of Schools for the Board was James Bathurst.[1] Plaintiff alleges that, because Plaintiff is openly homosexual and communicated as much to his students, he became the target of harassment from his fellow teachers and school administrators in the Collingswood school district.  As a result of the alleged harassment, Plaintiff suffered severe anxiety attacks that required him to take a leave of absence during January and February of 2003.  At the conclusion of Plaintiff's leave, Plaintiff alleges that Defendants (1) refused to allow him to

_____

[1]  Plaintiff is a resident of Philadelphia, Pennsylvania and both the Board and Bathurst reside in Collingswood, New Jersey.

2

return to work and (2) terminated him (by failing to renew his teaching contract) in violation of the FMLA and NJLAD.

For the reasons expressed in this Opinion, the Court finds that Plaintiff's leave of absence qualifies as medical leave under the FMLA and, by refusing to allow him to return to work after his doctor provided medical clearance, Defendants interfered with Plaintiff's rights under the FMLA.  As such, the Court will grant Plaintiff's motion for partial summary judgment as to Count I.  Because genuine issues of material fact exists surrounding Plaintiff's claims of retaliation under the FMLA and wrongful termination in violation of the NJLAD, the Court will deny Defendants' motion for partial summary judgment as to Counts II and IV.[2]

I.   **BACKGROUND**

   **A.   The 2000-2001 and 2001-2002 School Years**

   Plaintiff began teaching at Collingswood High School in September of 2000.  (Certification of Lisa S. Grosskreutz, Ex. A.)  The events relevant to this litigation, however, began in February or March of 2002.  Plaintiff, who is homosexual,

---

[2]  At oral argument, the Court questioned Plaintiff regarding his failure to respond to Defendants' motion for partial summary judgment regarding Plaintiff's claims of a hostile work environment.  Plaintiff's counsel conceded that partial summary judgment as to his claims of a hostile work environment (Count III) was appropriate and agreed that this count should be dismissed.  Accordingly, the Court will dismiss Count III.

(Amended Compl. ¶ 9), encountered a group of students and alumni of Collingswood High School in what Plaintiff described as "a gay coffeehouse" in Philadelphia where Plaintiff was dining with his boyfriend. (Grosskreutz Cert., Ex. B., Deposition Transcript of Daniel Curcio at 93-95.) In the weeks following this encounter, Plaintiff claims that he overheard comments and heard rumors circulating among students in the school that Plaintiff was homosexual. (Id.) At the time, Plaintiff had not disclosed his sexual orientation to either the students or faculty of the school. (Id. at 103-04.)

On March 13, 2002, in response to a question from a student, Plaintiff informed his Spanish class that he was homosexual. (Id. at 122-23.) Plaintiff then briefly discussed his homosexuality and identity as a homosexual male with his class. (Id.) The following day, Plaintiff had similar discussions with his other Spanish classes. (Id.) On the evening of March 14, 2002, Superintendent Bathurst and Dr. Thomas Anderson (the Collingswood school district affirmative action officer) were notified that Plaintiff had discussed his homosexuality with a number of his classes and that Plaintiff had called two television news stations inquiring whether they wished to do a story about Plaintiff's discussions with his classes. (Id. at 148-51; Grosskreutz Cert. Ex. D, Deposition Transcript of Dr. Thomas Anderson at 15-19.) On March 15, 2002, Dr. Anderson spoke

4

with Plaintiff about his class discussions.  (Anderson Depo. Tr. at 15-19.)

On March 20, 2002, Bathurst met with Plaintiff, Charles Earling (principal of Collingswood High School), and Robert Barikian (president of Plaintiff's union).  (Grosskreutz Cert., Ex. C., Deposition Transcript of James Bathurst at 7-8.) Following the meeting, Plaintiff was issued a formal reprimand for using class time to discuss issues not connected to his classes' curriculum.  (Id.)  The reprimand also warned Plaintiff that if a similar event occurred in the future, the Board would take additional disciplinary action.  (Id.)

On April 18, 2002, Plaintiff was involved in an altercation with a fellow teacher that led to Plaintiff meeting with Dr. Anderson and Collingswood High School vice-principal Karen Principato.  (Anderson Depo. Tr. at 21-24; Grosskreutz Cert. I, Deposition Transcript of Karen Principato at 11-16.)  At the meeting, Plaintiff complained that he was regularly harassed at the school.  (Id.)  At the conclusion of the meeting, Bathurst was contacted and he requested to speak with Plaintiff about Plaintiff's allegations.  (Id.)  Plaintiff refused to speak with Bathurst and, consequently,  was placed on administrative leave. Ultimately, Plaintiff met with Bathurst, Dr. Anderson and Barikian on April 22, 2002.  (Curcio Depo. Tr. at 46.)  At the conclusion of the meeting, Plaintiff was instructed to report

immediately any concerns he had or incidents where he was harassed to Dr. Anderson and Bathurst.  (Id.)  On April 23, 2002, Plaintiff returned from administrative leave.  (Id.)

On May 22, 2002, Plaintiff met with Dr. Anderson.  During the three-hour meeting, Plaintiff detailed the alleged incidents of harassment and Plaintiff's concerns regarding a hostile environment at the school.  (Grosskreutz Cert. E., Investigation Report of Dr. Anderson.)  As a result of this meeting, Dr. Anderson launched an investigation into Plaintiff's concerns and, upon its conclusion, drafted a lengthy report summarizing his findings.  (Anderson Report at 1.)  A copy of the report was forwarded to Plaintiff and the Board.  (Id.)  The report cited certain events that Plaintiff claimed created a hostile work environment, including:

- Plaintiff overheard a conversation between two teachers where one teacher commented that a picture of two wrestlers in the Collingswood High School yearbook looked like the wrestlers were engaged in homosexual sex;

- Plaintiff claims that a hostile work environment exists because 20% of the faculty "were against" Plaintiff's decision to discuss his sexual orientation with his class;

- Plaintiff overheard a conversation between two teachers in which one teacher assigned detention to several students who told the teacher that he "look[ed] gay" because he was wearing a yellow shirt;

- Plaintiff received a "big wave and hello" from a fellow teacher (which Plaintiff felt was exaggerated and out of the ordinary);

- Plaintiff states that a Spanish teacher was rude and inattentive to him after the faculty learned of Plaintiff's sexual orientation;

- Plaintiff heard a teacher say, "shh - he's coming," as he entered the student lounge;

- Plaintiff alleges that a fellow teacher intentionally bumped him while the two were on hall duty;

- Plaintiff alleges that the written reprimand he received from Bathurst on March 28, 2002 was "negative, hostile and homophobic;" and

- Plaintiff alleges that he has had a number of confrontations with other teachers, and that, after Plaintiff revealed that he was homosexual, teachers once friendly to him were no longer friendly.

(Memorandum from Dr. Anderson to Earling, dated June 10, 2002.)

## B.   The 2002-2003 School Year[3]

During the first days of the 2002-2003 school year, Plaintiff again used class time to inform students in each of his classes that he was homosexual.  (Curcio Depo. Tr. at 118-29.) These incidents prompted a September 12, 2002 meeting between Plaintiff, Bathurst and Anderson in which Plaintiff received a second written reprimand for misusing class time.  (Id.)

On October 29, 2002, Plaintiff conducted "surveys" in all of his Spanish classes in which he asked his class whether Plaintiff "ever [taught] sexual orientation - the nature of it, except

---

[3]   The Court notes that Plaintiff was hired by the Board to work during the Summer of 2002.  (Grosskreutz Cert. ¶ 15.) In July of 2002, Plaintiff was involved in an incident of insubordination for which he received a written reprimand.  (Id.)

telling you I'm gay."  (Grosskreutz Cert. Q, Transcript Notes of
Ardith Favorite).  As before, these comments led to a meeting
between Plaintiff, Bathurst and Plaintiff's union representative
(that took place on December 18, 2002) in which Plaintiff was
again admonished for using class time to discuss his sexual
orientation.  (Curcio Depo. Tr. at 164-173.)

On December 19, 2002, Plaintiff requested a meeting with
Bathurst, Dr. John McMullin (Plaintiff's supervisor), Earling and
Plaintiff's union representative.  (Id. at 167-173)  During the
meeting, Plaintiff read a prepared statement in which he referred
to Bathurst as homophobic and made certain demands on Defendants.
(Id.)  On December 20, 2002, Plaintiff received a third written
reprimand for using class time to discuss issues other than
Spanish instruction and his continued disregard of administrative
directives.  (Grosskreutz Cert., Ex. S.)  December 20, 2002 was
Plaintiff's last day teaching at the school.  (Pl.'s SUF ¶ 8.)

### C.   The Events of January and February of 2003

In late November of 2002, Plaintiff began experiencing
stress-induced dysphagia and panic attacks.  (Pl.'s SUF ¶ 7.)
Specifically, on November 21, 2002, Plaintiff suffered a panic
attack and was treated at the Crisis Response Center of
Pennsylvania Hospital.  (Id.)  A little more than a month later
(on December 24, 2002), Plaintiff suffered three panic attacks
and was treated at the emergency room of Kennedy Memorial

8

Hospital in Stratford, New Jersey.  (Id. ¶ 9.)  Following these
panic attacks, Dr. William Duffy M.D. provided Plaintiff with a
note excusing him from work beginning on January 2, 2003 for "at
least four weeks."  (Bathurst Depo. Tr. at 47, Ex.1.)  The note
stated that Dr. Duffy was excusing Plaintiff from work "due to
illness."  (Id.)  Also on January 2, 2003, Plaintiff wrote to
Bathurst informing him that Plaintiff was suffering from severe
anxiety and stress and would be out of work for at least four
weeks.  (Bathurst Ex. 1.)

On January 14, 2003, Bathurst forwarded a letter to
Plaintiff informing him that he had exhausted his paid sick leave
as of January 14, 2003.  (Grosskreutz Cert., Ex. C., Letter from
Bathurst, dated 1/14/2003.)  On January 30, 2003, Harry
Schwartzer, the Collingswood School District's business
administrator forwarded a letter to Plaintiff (1) informing him
of the amounts he must contribute to the premiums of his medical
benefits in order to continue such benefits, (2) providing
Plaintiff with information about his disability insurance and (3)
stating that Plaintiff was entitled to "protect [his] health
benefits" under the FMLA.[4]  (Id.)  One day later, Board counsel

---

[4]  With respect to the FMLA, the letter states, in pertinent
part:

> You are entitled to protect your health benefits under
> the Federal Family Leave Act [sic] for up to twelve
> (12) weeks.  You must request this leave in order to be
> eligible.  If you choose not to apply, you are eligible

Alan R. Schmoll, Esq. forwarded a letter to Plaintiff's former
counsel Jonathan J. James, Esq. informing him that Plaintiff
would not be permitted to return to work without first providing
written reports from his treating doctors setting forth
diagnoses, prognoses and medical opinions regarding Plaintiff's
fitness for duty.  (Grosskreutz Cert. F, Letter from Schmoll,
dated 1/31/03.)  In addition, the letter stated that Plaintiff
"will not be permitted to report to work, whether it is on
[February 3, 2003] or any other date, without first providing the
above described information [and the Board] may also require its
own fitness for duty evaluation...as well."  (Id.)[5]  On February
12, 2003, the Board's attorney wrote to Plaintiff's attorney
reiterating that Plaintiff would not be permitted to return to
work without first providing the medical documentation referred
to in the Board's January 31, 2003 letter.  (Pl.'s SUF ¶ 17.)

     On February 19, 2003, Plaintiff attended a meeting with Dr.
Anderson, McMullin and Bathurst in which Plaintiff was advised
that he would not be permitted to return to work unless he

_____

        to maintain your benefits under COBRA with appropriate
        payments to cover your benefits.

(Id.)

     [5]  Plaintiff contends that such requirements are contrary to
the Board's normal policy and practice of requiring teachers
returning to work from FMLA leave to simply provide a doctor's
note, clearing them to work without restriction.  (Pl.'s SUF ¶
14.)

provided all the medical documentation requested by the Board in Schmoll's January 31, 2003 letter.  At the meeting, Plaintiff showed Defendants a note from Dr. William Duffy, M.D. stating that Plaintiff was cleared to "return to full duty work on [February 17, 2003.]" (Def.'s Answers to Pl.'s Request for Admissions ¶¶ 9 and 12, Ex. G.)  Plaintiff was informed that such a note was insufficient to allow him to return to work.  (Id. ¶ 12.)  On March 3, 2002, Bathurst forwarded a letter to Plaintiff indicating that, because Plaintiff had indicated that he would not make medical documentation available to the Board, Plaintiff could, in the alternative, allow his doctor to speak with the school district's doctor.  (Grosskreutz Cert., Ex. J, Letter from Bathurst, dated 3/3/03.) Plaintiff never responded to the letter.

## II.  **PROCEDURAL HISTORY**

On March 28, 2005, Plaintiff filed an Amended Complaint against the Board and Bathurst.  (Docket Item No. 9.)  The Amended Complaint contained three counts: (1) a claim for violation of the FMLA for refusing to allow Plaintiff to return to work after his leave (an "interference" claim), (2) a claim for violation of the FMLA for terminating his employment (a "retaliation" claim"), and (3) a violation of the NJLAD (stating that Defendants permitted a hostile working environment).  On November 28, 2005, with the Court's permission, Plaintiff filed a second Amended Complaint adding a fourth count for violation of

11

the NJLAD for Plaintiff's wrongful termination.  (Docket Item No. 21.)  On November 18, Plaintiff filed a motion for partial summary judgment (related to Count I of the Amended Complaint). (Docket Item No. 18.)  On December 2, 2005, Defendants filed a cross-motion for partial summary judgment (as to Count I of the Amended Complaint) to which Plaintiff responded on December 7, 2005.  (Docket Item Nos. 22 and 23.)  On January 17, 2006, Defendants filed a motion for partial summary judgment as to Counts II, III, and IV of the Amended Complaint.  (Docket Item No. 25.)  Plaintiff filed opposition to Defendants' motion on February 17, 2006 to which Defendants replied on March 30, 2006. (Docket Item Nos. 27 and 28.)  The Court heard oral argument on all pending motions on April 7, 2006.

## III. __SUMMARY JUDGMENT STANDARD OF REVIEW__

Defendants and Plaintiff have cross-moved for summary judgment as to Count I and Defendants have moved for summary judgment as to Counts II, III, and IV, pursuant to Rule 56, Fed. R. Civ. P.  A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty

12

Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only
if it might affect the outcome of the suit under the applicable
rule of law.  See id.  Disputes over irrelevant or unnecessary
facts will not preclude a grant of summary judgment.  Id.[6]  The
summary judgment standard does not change when, as here, the
parties have filed cross-motions for summary judgment.  See
Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).[7]

---

[6]  Moreover, a non-moving party must do more than rely only
"upon bare assertions, conclusory allegations or suspicions."
Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied,
474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477
U.S. at 249-50.  Thus, if the non-moving party's evidence is a
mere scintilla or is "not significantly probative," the court may
grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50;
Country Floors, 930 F.2d at 1061-62.

[7]  Cross-motions for summary judgment:

    are no more than a claim by each side that it alone is
    entitled to summary judgment, and the making of such
    inherently contradictory claims does not constitute an
    agreement that if one is rejected the other is
    necessarily justified or that the losing party waives
    judicial consideration and determination whether
    genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d
555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc.,
402 F.2d 241, 245 (3d Cir. 1968)).  If review of cross-motions
for summary judgment reveals no genuine issue of material fact,
then judgment may be entered in favor of the party deserving of
judgment in light of the law and undisputed facts.  See Iberia
Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998)
(citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d
139, 145-46 (3d Cir. 1988)).

IV.  **CLAIMS UNDER THE FMLA (COUNTS I AND II)**

The FMLA was enacted to provide leave for workers whose personal or medical circumstances necessitate that they take time off from work in excess of what their employers are willing or able to provide. _See_ 29 U.S.C. § 2601, _et seq._; _see also_ _Victorelli v. Shadyside Hosp._, 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101).[8]  Employees who take FMLA leave are entitled to certain protections. _See_ 29 U.S.C. § 2614.  For example, an employee's leave cannot be denied, his or her health benefits must be maintained and, upon return from leave, he or she must be restored to the same, or an equivalent position.  _See_ _id_.  To protect these rights, employers are prohibited from

---

[8]  The Act is intended "to balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition."  _Churchill v. Star Enters._, 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

In furtherance of these objectives, the FMLA requires that an eligible employee receive twelve workweeks of leave under certain circumstances. _See_ 29 U.S.C. § 2612.  These include the onset of a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  _Id_. at § 2612(a)(1)(D).  A "serious health condition" is "an illness, injury, impairment, or physical or mental condition" that involves "(A) inpatient care in a hospital or (B) continuing treatment by a health care provider."  _Id_. at § 2611(11).  When "an eligible employee needs to take FMLA leave that was not foreseeable, 'the employee need not expressly assert rights under the FMLA or even mention the FMLA; rather the employee need only notify the employer that leave is needed.'"  _Conoshenti v. PSE&G Co._, 364 F.3d 135, 141 (3d Cir. 2004)(quoting 29 C.F.R. § 825.303(b)(2005)).

engaging in certain prohibited acts.  See 29 U.S.C. § 2614.
First, § 2615(a)(1) makes it unlawful for "any employer to
interfere with, restrain, or deny the exercise of or the attempt
to exercise, any right provided" under the FMLA.  Id. at §
2615(a)(1)(a so-called "interference" claim).  Second, § 2615(b)
makes it unlawful for "any employer to discharge or in any other
manner discriminate against any individual for opposing any
practice made unlawful" under the FMLA.  Id. at § 2615(b)(a so-
called "retaliation" claim).

### A.   Plaintiff's Interference Claim (Count I)

Interference claims are "based on the prescriptive sections
of the FMLA which create substantive rights for eligible
employees."  Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d
478, 485 (D.N.J. 2002) (citing Hodgens v. General Dynamics Corp.,
144 F.3d 151, 159 (1st Cir. 1998)).   An interference claim is
"not about discrimination" and therefore, a burden shifting
analysis is not required.  Callison v. City of Phila., 2004 U.S.
Dist. LEXIS 6770, at *11 (E.D. Pa. 2004).  Rather, "these
prescriptive rights 'set floors for employer conduct.'"  Parker,
234 F. Supp. 2d at 485 (quoting Hodgens, 144 F.3d at 159.)  The
Department of Labor has promulgated regulations regarding
interference claims, stating that "any violation of the [FMLA] or
of these regulations constitute interfering with, restraining, or
denying the exercise of rights provided by the [FMLA]."  29

15

C.F.R. § 825.220(b).   "Interference" includes "[a]ny violations of the Act or of these regulations."  Id.  To prevail on an FMLA interference claim, a plaintiff must establish that the employer denied him a benefit to which plaintiff was entitled under the statute.  See Hodgens, 144 F.3d at 159.

### 1.   Whether Plaintiff's leave was protected by the FMLA

Plaintiff and Defendants filed cross-motions for partial summary judgment related to Count I of the Amended Complaint. Count I alleges that Defendants violated the FMLA by refusing to allow Plaintiff to return to work at the cessation of his medical leave in February of 2003.  (Amended Compl. ¶¶ 26-36.)  This Court must first determine whether Plaintiff's leave of absence was protected by the FMLA.  Plaintiff argues that his leave was protected because he alerted the Board that he was taking leave for a serious health condition.  (Pl.'s Br. at 7.)  According to Plaintiff, "[t]he notice requirement imposed on an employee taking FMLA leave is not meant to be onerous," rather, an employee need only provide his employer with sufficient information so that the employer knows that the employee's absence is for a FMLA-qualifying reason.  (Id.)

Defendants argue that Plaintiff's leave was not protected by the FMLA because Plaintiff (i) failed to communicate to the Board Plaintiff's desire to take FMLA leave and (ii) did not respond to the Board's January 30, 2003 letter informing him of his FMLA

rights and obligations.  (Def.'s Opp. Br. at 5.)  According to

Defendants, the employee must provide the employer with

sufficient information for the employer to designate the leave as

FMLA leave and the employer's duty arises only upon receipt of

such information.  (Id. at 6.)  According to Defendants,

Plaintiff neither communicated his intent to take a FMLA leave or

responded to the Board's letter informing Plaintiff of his FMLA

rights and obligations.  (Id.)  Defendants argue that, without

such notice from the employee, an employer, then, is under no

duty to designate an employee's leave as FMLA leave.  (Id.)

Defendants also argue that, because Plaintiff failed to comply

with the Board's request for information about Plaintiff's

medical condition, Plaintiff is not entitled to protection under

the FMLA.  (Id. at 9.)  Specifically, Defendants argue that,

after the Plaintiff commenced his leave, the Board sent him a

letter "informing him of his entitlement to FMLA leave and

informing him that he had to apply for the leave in order to be

eligible."  (Id.)  Defendants contend that this letter served to

provide Plaintiff with the requisite notice under 29 C.F.R. §

825.303(b).[9]  (Id.)  According to Defendants, because Plaintiff

_____

[9]  Section 825.303(b) states:

The employee should provide notice to the employer
either in person or by telephone, telegraph, facsimile
("fax") machine or other electronic means. Notice may
be given by the employee's spokesperson (e.g., spouse,
adult family member or other responsible party) if the

17

never supplied the requested additional information, his leave
should not be deemed FMLA leave.  (Id. at 10.)

This Court holds that Plaintiff's leave is properly
designated as FMLA leave.  The parties do not dispute that
Plaintiff is entitled to leave under the FMLA under §
2612(a)(1)(D) which provides that "an eligible employee shall be
entitled to...leave...[b]ecause of a serious health condition
that makes the employee unable to perform the functions of the
position of such employee."  Under the regulations, "[i]n all
circumstances, it is the employer's responsibility to designate
leave, paid or unpaid, as FMLA qualifying, and to give notice of
the designation to the employee...."  Conoshenti, 364 F.3d at 141
(emphasis added); see also 29 C.F.R. § 825.208(a), (b).  Under §
825.208(a)(1), "an employee giving notice of the need for unpaid
FMLA leave must explain the reasons for the needed leave so as to
allow the employer to determine that the leave qualifies under
the Act."  In addition, § 825.208(a)(2) creates a lenient
standard for what constitutes FMLA notice under the regulations,

employee is unable to do so personally. The employee
need not expressly assert rights under the FMLA or even
mention the FMLA, but may only state that leave is
needed. The employer will be expected to obtain any
additional required information through informal means.
The employee or spokesperson will be expected to
provide more information when it can readily be
accomplished as a practical matter, taking into
consideration the exigencies of the situation.

29 C.F.R. § 825.303(b).

as an employee giving notice of the need for unpaid FMLA leave "does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligations to provide notice."  29 C.F.R § 825.208(a)(2).  Rather, the employee need only "state a qualifying reasons for the need for leave."  Id.  The lenient standard is supported by case law in this District and others.[10]  The burden on the employee to give FMLA notice is not onerous or overly-technical and it is usually easily satisfied.

Here, Plaintiff provided his employer with a letter specifically stating that he was suffering from "severe anxiety disorder" and that the "severe...anxiety" has rendered him "physically and mentally" unable to work.  In addition, Plaintiff provided Defendants with a doctor's note explicitly stating that Plaintiff should be excused from work for at least four weeks "due to illness."  Plaintiff certainly complied with the notice requirements under § 825.208(a)(1) and (2), as this

---

[10]  See Viereck v. City of Gloucester City, 961 F. Supp. 703 (D.N.J. 1997)(employee telling employer that she was in a car accident, sustained injuries, was hospitalized and would not be able to return to work due to her medical condition satisfied the notice requirement); Price v. City of Fort Wayne, 117 F.3d 1022, 1025-26 (7th Cir. 1997)(holding that leave request specifying medical need and attaching doctor's note satisfied FMLA notice requirement); Spangler v. Federal Home Loan Bank of Des Moines, 278 F.3d 847 (8th Cir. 2002)(holding that a jury could reasonably construe that the two-word message "depression again" was sufficient notice to employer of employee's desire for FMLA leave).

correspondence is sufficient to alert Defendants that Plaintiff desired to take leave under 29 U.S.C. § 2612(a)(1)(D) for a "serious health condition." Because Plaintiff satisfied his notice obligations, under 29 C.F.R. § 825.208(a), Defendants were obligated to designate Plaintiff's leave as FMLA leave.[11] Defendants cannot now turn their failure to designate properly Plaintiff's leave as FMLA leave against Plaintiff and claim that Plaintiff is not entitled to the protection of the Act.

> **2.** **Whether Defendants violated the FMLA by refusing to allow him to return to work**

Having determined that Plaintiff's leave qualifies as FMLA leave and that he is entitled to protections guaranteed under the Act, this Court must now address whether Defendants violated the FMLA when they refused to allow him to return to work. On February 19, 2003, Plaintiff returned to Collingswood High School with a doctor's note clearing him to return to work. (Pl.'s SUF

---

[11] This Court also disagrees with Defendants' argument that, because Plaintiff failed to comply with the Board's request for information about Plaintiff's medical condition, Plaintiff is not entitled to FMLA protections. It is true that under § 825.303(b) of the regulations an employee is expected to provide the employer with "more information when it can readily be accomplished," such duty is triggered when an employer requests such additional information. 29 C.F.R. § 8253.303(b). However, Defendants' January 30, 2003 letter never requested any additional materials. Defendants' letter - which incorrectly identified the FMLA as the "Federal Family Leave Act" - also appears to suggest that Plaintiff needed to apply to the Board in order to be eligible for the FMLA. This is clearly not the case, as the statute and regulations do not require that an application be made - only that an employee provide notice as required by 29 C.F.R. § 825.205(a).

¶ 19.)  According to Plaintiff, Bathurst barred him from
returning to work until Plaintiff provided the Board with more
detailed documentation from his treating physician regarding his
illness and underwent a fitness-for-duty evaluation.  (Id.)
Plaintiff acknowledges that, in limited cases, an employer may:
(1) require that an individual returning to work after medical
leave present a certification from his treating physician
attesting to his ability to return to work, (2) contact the
employee's doctor for the purposes of obtaining clarification of
an employee's fitness to return to work, and (3) require an
employee to submit to a fitness-for-duty evaluation as a
condition for reinstatement.  See 29 C.F.R. § 825.310.  In the
present case, however, Plaintiff argues that he was entitled to
return to work by simply providing a generic doctor's note.
(Pl.'s Br. at 11-12.)  By not allowing him to return until he
completed a fitness-for-duty evaluation, Plaintiff contends that
Defendants interfered with Plaintiff's rights under the FMLA.

     Defendants argue that they were well within their rights to
require a fitness-for-duty examination before readmitting
Plaintiff to the classroom.  (Def.'s Opp. Br. at 10.)  Defendants
point out that 29 C.F.R. § 825.310(b) provides that "if State or
local law or the terms of a collective bargaining agreement
govern an employer's return to work, those provision shall be
applied."  Defendants assert that N.J. Stat. Ann. 18A:16-2 -

which provides that "[e]very board of education...may require
additional individual psychiatric or physical examinations of any
employee, whenever, in the judgment of the board, an employee
shows evidence of deviation from normal, physical or mental
health" - is the type of "State or local law" contemplated by §
825.310(b).  (Id.)  Application of N.J. Stat. Ann. 18A:16-2,
Defendants argue, empowers school boards to bar school employees
from returning to work until the employee undergoes a psychiatric
and physical examination to prove that he is fit for duty.
(Def.'s Opp. Br. at 10-13.)[12]

In barring Plaintiff from returning to work, the Board
claims that it was exercising discretion in order to protect the
student body, as Bathurst was concerned about the safety of
students and staff "in light of Plaintiff's agitated and
uncontrollable behavior during an incident in October 2002."
(Def.'s Opp. Br. at 12.)  In addition, Bathurst testified that he
was concerned about Plaintiff's ability to teach effectively due
to Plaintiff's self-characterization in emails to Defendants in
which Plaintiff stated that his teaching "wouldn't actually be of

_____

[12]  According to Defendants, under Gish v. Board of Educ.,
145 N.J. Super. 96, 105 (App. Div. 1976), the New Jersey
Appellate Division held that school boards are entrusted by the
New Jersey State Legislature with the duty of determining the
fitness of teachers.  Specifically, the court held that the board
of education has an "obligation to determine the fitness of
teachers...to protect the students from a significant danger to
them, whether it be physical or otherwise."  Gish, 145 N.J.
Super. at 105.

the quality I normally produce" and that he had been in a psychiatric ward and was "drugged up."  (Id. at 12-13.)  Thus, according to Defendants, under § 825.310(b) and N.J. Stat. Ann. 18A:16-2, the Board had a right and duty to have Plaintiff undergo a fitness-for-duty evaluation prior to his reinstatement. (Id.)

This Court will grant summary judgment in favor of Plaintiff with respect to Count I.  As discussed in Section IV.A.1, supra, Plaintiff's medical leave of absence qualifies as leave under the FMLA and thus, Plaintiff is entitled to protections under the FMLA.  As such, under the statute and pertinent regulations, Defendants violated the FMLA by requiring that Plaintiff provide Defendants with additional medical reports, diagnoses, prognoses and medical opinions demanded in Defendants' January 31, 2003 letter as a condition of Plaintiff returning to work.

29 C.F.R. § 825.310 and 29 U.S.C. § 2614(a) govern the circumstances under which an employer may require an employee to submit a medical certification that the employee is able to work (i.e., a "fitness-for-duty" report).[13]  Under § 825.310(a), an

_____

[13]  29 U.S.C. § 2614(a) permits employers to impose, as a condition of returning to work,

> a uniformly applied practice or policy that requires
> each employee to receive certification from the health
> care provider of the employee that the employee is able
> to resume work, except that nothing in this paragraph
> shall supersede a valid State or local law or a
> collective bargaining agreement that governs the return

employer may "have a uniformly-applied policy or practice that requires all similarly-situated employees who take leave for [medical] conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work."  29 C.F.R. § 825.310(a).  Such "certification itself need only be a simple statement of an employee's ability to return to work."  Id. at § 825.310(c).  While a "health care provider employed by the employer may contact the employee's health care provider...for purposes of clarification of the employee's fitness to return to work" it is clear that "no additional information may be acquired, and...the employer may not delay the employee's return to work while contact with the health care provider is being made."  Id.  Moreover, the employer is required to give the employee "specific notice" that a "fitness-for-duty certification is required either at the time notice of the need for leave is given or immediately after leave commences and the employer is advised on the medical circumstances requiring the leave."  Id. at § 825.310(e).  "An employer may delay restoration to employment until an employee submits a required fitness-for-duty certification unless the employer has failed to provide the notices required in paragraph (e)."  Id. at § 825.310(f).

---

to work of such employees.

24

Even assuming that the Board has a "uniformly-applied policy or practice" requiring that all teachers returning from FMLA medical leave provide a medical certification, Defendants were not justified in delaying Plaintiff's restoration to his teaching position.  Plaintiff complied with § 825.310(a) of the regulations - the requirement that Plaintiff obtain and present certification from the employee's health care provider that the employee is able to return to work - as Plaintiff provided Defendants with a doctor's note from Dr. William Duffy, M.D. stating that Plaintiff was cleared to "return to full duty work on [February 17, 2003]."  (Def.'s Answer to Pl.'s Requests for Admission §§ 9 and 12).  All that is required under § 825.310(c) is "a simple statement of an employee's ability to return to work."  29 C.F.R. § 825.310(c).

If, as a condition of Plaintiff's returning to work, Defendants required an additional fitness-for-duty exam, Defendants failed to provide Plaintiff with timely notice of as much.  Under § 825.310(e), "specific notice shall be given...either at the time notice of the need for leave is given or immediately after leave commences and the employer is advised of the medical circumstances."  At best, Plaintiff first learned that he must submit a fitness-for-duty report upon receipt of Mr. Schmoll's January 31, 2003 letter - some 29 days after Plaintiff alerted Defendants of his need for, and the medical circumstances

surrounding, medical leave.  (Bathurst, Ex.1.)  According to §
825.310(f), an employer "may delay restoration of employment
until an employee submits a required fitness-for-duty
certification unless the employer has failed to provide the
notice required" under this Section.  Here, Defendants never
provided Plaintiff with timely notice as is required under §
825.310(c) and therefore, cannot delay restoration of Plaintiff's
employment until he submits a fitness-for-duty certification.

     As mentioned above, Defendants take the position that the
FMLA allows a more stringent return-to-work certification if
state law allows.  Defendants cite 29 C.F.R. § 825.310(b) which
provides that "if State or local law or the terms of a collective
bargaining agreement govern an employee's return to work, those
provisions shall be applied" to the FMLA.[14]  Defendants argue
that the Board was justified in requiring a fitness-for-duty exam
because the Board applied N.J. Stat. Ann. 18A:16-2 (hereafter
"Section 18A:16-2"), a state law which authorizes the Board to

------

          [14]  In addition, § 2614(a)(4) of the FMLA permits employers
to impose, as a condition of returning to work:

          a uniformly applied practice or policy that requires
          each employee to receive certification from the health
          care provider of the employee that the employee is
          able to resume work, except that nothing in this
          paragraph shall supersede a valid State or local law
          or a collective bargaining agreement that governs the
          return to work of such employees.

29 U.S.C. § 2614(a)(4).

require that a teacher undergo individual psychiatric or physical examinations "when...an employee shows evidence of deviation from normal, physical or mental health."  N.J. Stat. Ann. 18A:16-2. Defendants contend that application of Section 18A:16-2 is consistent with Section 18A:16-2's purpose, <u>i.e.</u>, "protecting school children from the influence of unfit teachers...who have shown evidence of harmful, significant deviation from normal mental health...."  <u>Kochman v. Keansburg Bd. of Ed.</u>, 124 N.J. Super. 203, 212 (Ch. Div. 1973).

This Court is not persuaded by Defendants' argument that application of N.J. Stat. Ann. 18A:16-2 allows the Board to condition Plaintiff's return from FMLA leave upon the completion of a fitness-for-duty exam (either psychiatric and physical) permitted by N.J. Stat. Ann. 18A:16-2.  First, Section 18A:16-2 is not a law that "governs an employee's return to work" as required by 29 C.F.R. § 825.310(b).  Section 18A:16-2 contains no language addressing the issue of restrictions or conditions on a school employee's return to work.  Rather, the statute merely states that the Board may require an employee or candidate to undergo a physical or psychiatric examination if the Board determines that the employee "shows evidence of deviation from normal, physical or mental health."  N.J. Stat. Ann. 18A:16-2. Defendants have not directed the Court, and the Court's own research has failed to uncover, any case law in which Section

18A:16-2 was used as a screening tool either for a school employee returning from medical leave or where a court has interpreted Section 18A:16-2 to allow a school board to prevent an employee from working pending the outcome of a psychiatric or physical evaluation ordered pursuant to Section 18A:16-2.[15]

Second, "the right of restoration is a substantive statutory right that is guaranteed to eligible employees by the FMLA." Routes v. Henderson, 58 F. Supp. 2d 959, 994 (S.D. Ind. 1999) (citing King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999)). As such, Plaintiff's right to return to work cannot easily be diminished or abrogated by a state or local law that does not speak to the circumstances of restoration.[16] This Court

---

[15]   Indeed, Section 18A:16-2 does not state that a school employee or teacher should be removed from school or the classroom pending the results of an evaluation. Rather, New Jersey law appears to contemplate that a teacher will continue working while undergoing such an examination as the statute states "[i]f the results of such examination indicates mental abnormality...the employee shall be ineligible for further service until proof of recovery...." N.J. Stat. Ann. 18A:16-4 (emphasis added); see also Kochman, 124 N.J. Super. at 212.

[16]   The Court notes that a number of courts in other Circuits have held that provisions of a collective bargaining agreement can impose additional requirements on an employee return to work that are more burdensome than what is set forth in the FMLA. See Harrell v. U.S. Postal Serv., 2006 U.S. App. LEXIS 11072, *26-28 (7th Cir. 2006); Conroy v. Township of Lower Merion, 2001 U.S. Dist. LEXIS 11460, *7-8 (E.D. Pa. 2001). The provisions of these collective bargaining agreements in these two cases, in contrast to the Section 18A:16-2, specifically address conditions an employee must satisfy in order to return to work after the cessation of a medical leave. The present case is distinguishable from these and more similar to Routes v. Henderson, where the court found that the U.S. Postal Service had

will not apply a state or local law under Section 825.310(b) of
the FMLA absent statutory language, or at least clear precedent,
that the statute specifically addresses conditions of an
employee's return to work.

The Court's holding does not preclude the Board from, at
some point, requiring Plaintiff to undergo a psychiatric or
physical evaluation after due notice (which was not given here)
conducted by one of the Board's doctors.  To be sure, the
protections of the FMLA do not immunize a teacher from the
requirement that a teacher undergo an evaluation under N.J. Stat.
Ann. 18A:16-2.  Had Defendants (1) allowed Plaintiff to return to
work and (2) complied with the procedural due process afforded to
a teacher prior to undergoing a psychiatric evaluation pursuant
to Section 18A:16-2 (i.e., providing Plaintiff with a statement
outlining the reasons the Board is ordering that he undergo such
an exam and providing him with the opportunity for a hearing, if
requested), Defendants would likely have been free to order such
an evaluation.  See Gish v. Board of Ed., 145 N.J. Super. 96, 100
(App. Div. 1976) citing Kochman v. Keansburg Bd. of Ed., 124 N.J.

---

violated the FMLA by conditioning an employee's return to work on
"vague[] and general[]" language of a collective bargaining
agreement.  Routes, 58 F. Supp. 2d at 994.  This Court follows
the rule set out in Routes in holding that language not
specifically governing "return-to-work" scenarios is "unlikely to
take precedence over the more specifically-worded" Section
2614(a)(4) of the FMLA.  Id.

Super. 203 (Ch. Div. 1973).  However, Defendants never let this
course of action unfold.

   **B.   Plaintiff's Retaliation Claim (Count II)**

     In a separate motion from the cross-motions for partial
summary judgment, Defendants seek partial summary judgment with
respect to Count II of the Amended Complaint.  Defendants argue
that Plaintiff cannot maintain a cause of action for retaliation
under the FMLA.  Section 2615(a)(2) of the FMLA makes it
"unlawful for any employer to discharge or in any other manner
discriminate against any individual for opposing any practice
made unlawful" by the FMLA.

     Caselaw on FMLA retaliation under Section 2615(a)(2) is
sparse.  A FMLA retaliation claim is to be approached in the same
manner as retaliation under Title VII of the Civil Rights Act,
among other statutes.  See Buie v. Quad/Graphics, Inc., 366 F.3d
496, 503 (7th Cir. 2004).  Where retaliation is alleged under 29
U.S.C. § 2615(a)(2), plaintiff must ultimately show that he
opposed a practice made unlawful by FMLA; that he was subjected
to an adverse tangible employment action at the time, or after,
he opposed the unlawful practice; and that there was a causal
connection between the tangible employment action and plaintiff's
opposition to the practice.  The plaintiff's protected activity
must have a "determinative effect" on the employer's decision.
See Woodson v. Scott Paper Co., 109 F.3d 913, 935 (3d Cir.

30

1997)(holding that the "mixed motive" amendments to the Civil
Rights Act of 1991 do not apply to retaliation claims).  If the
plaintiff presents a prima facie case, the employer must
articulate a legitimate non-retaliatory reason for the adverse
employment action, see Conoshenti v. PSE&G, 364 F.3d 135 (3d Cir.
2004), and Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st
Cir. 1998), as to which the plaintiff then has the burden of
demonstrating that the proffered reason for the adverse action
was pretext for FMLA retaliation, see Richmond v. ONEOK, Inc.,
120 F.3d 205 (10th Cir. 1997), and Peter v. Lincoln Tech. Inst.,
255 F. Supp.2d 417 (E.D. Pa. 2002)

    Defendants argue that, even if Plaintiff could make a prima
facie case of retaliation, Plaintiff cannot demonstrate that
Defendants' actions in requiring him to undergo a fitness-for-
duty evaluation and choosing not to renew his contract for the
2003-2004 school year are a pretext for retaliation.  (Def.'s
Reply Br. at 13.)  Rather, according to Defendants, the "record
is replete with valid non-discriminatory reasons for Defendants'
actions."  (Id.)

    Plaintiff counters that he can show that the Defendants'
adverse employment decision was causally related to his taking
FMLA leave.  (Pl.'s Opp. Br. at 12-13.)  Section 825.220(c)
provides that "[a]n employer is prohibited from discriminating
against employees or prospective employees who have used FMLA

leave...[and] employers cannot use the taking of FMLA leave as a negative factor in employment actions...."  29 C.F.R. § 825.220(c).  Specifically, Plaintiff points out that both McMullin and Earling stated that one of the reasons for the Board's non-renewal of Plaintiff's contract was Plaintiff's "excessive absenteeism."  (Pl.'s Opp. Br. at 13.)  Plaintiff claims that his employment was terminated on account of protected absences because the only extended absence taken by Plaintiff during the last year of his employment was during his FMLA leave in January and February of 2003, .  (<u>Id</u>.)  Plaintiff further contends that when he objected to the Board's request for additional medical documentation above and beyond a doctor's note, he was "opposing...[a] practice which is unlawful under the Act."  (Pl.'s Opp. Br. at 13-14.)  According to Plaintiff, a reasonable jury could conclude that his refusal to accede to Defendants' unlawful demands for information was a determinative factor in his discharge.

The Court agrees with Plaintiff and will deny Defendants' motion for summary judgment as to Count II because numerous issues of material fact exist regarding Plaintiff's FMLA retaliation claim.

First, it is possible that Plaintiff can prove a prima facie case of retaliation under the FMLA.  Giving Plaintiff the benefit of all reasonable inferences, a reasonable jury can find that the

Board did not renew Plaintiff's employment contract for the 2003-2004 school year in retaliation for Plaintiff taking FMLA leave. Indeed, the fact that Plaintiff's supervisor and principal both list "excessive absenteeism" as one reason for the non-renewal when Plaintiff asserts that his only absences were during his FMLA leave raises material fact issues surrounding the reasons behind the Board's decision not to renew Plaintiff's contract.

Second, a reasonable jury could conclude that Plaintiff's contract was not renewed because Plaintiff failed to comply with Defendants' demands for additional medical information prior to Plaintiff's return to work.  As such, summary judgment as to Count II will be denied.

## V.   CLAIM UNDER THE NJLAD (COUNT IV)

Defendants also seek summary judgment as to Plaintiff's claim for wrongful discharge under the NJLAD.  The NJLAD was enacted with the express purpose of protecting civil rights, particularly in the area of employment discrimination, where the NJLAD declares that the opportunity to gain employment without fear of discrimination is a civil right.  See Viscik v. Fowler Equip. Co., Inc., 173 N.J. 1, 16 (2002) (citations omitted).  The NJLAD protects both physical and non-physical disabilities.  See N.J. Stat. Ann. 10:5-5(q)(2003).  An individual is non-physically disabled if he has (or is perceived to have) "any mental, psychological or developmental disability resulting

33

from...psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." <u>Id</u>.

In analyzing claims under the NJLAD, the New Jersey Supreme Court has adopted the analysis outlined by the U.S. Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Andersen v. Exxon Co., U.S.A.</u>, 89 N.J. 483 (1982). Under this burden-shifting analysis, the plaintiff bears the burden of persuading the trier of fact (by the preponderance of the evidence) that there has been actionable discrimination (satisfying the plaintiff's prima facie case). If a plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action at issue. <u>See</u> <u>Anderson</u>, 89 N.J. at 492. If the defendant succeeds in articulating a legitimate, non-discriminatory reason for the employment action, the plaintiff bears the burden of negating defendant's showing by demonstrating that the proffered reason is a pretext for unlawful discrimination. <u>See</u> <u>id</u>. Despite the shift of the burden of production to defendant, the plaintiff bears the burden of persuasion throughout the case. <u>See</u> <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).

34

To establish a prima facie case of discriminatory discharge under the NJLAD, the employee must prove that (1) he was disabled or perceived as disabled, (2) he was otherwise qualified to perform the essential functions of the job at a level that met the employer's legitimate expectations, (3) he nevertheless was fired, and (4) the employer sought someone to perform the same work after he left.  See Viscik, 173 N.J. at 12-13; Muller v. Exxon Research & Eng'g Co., 345 N.J. Super. 595, 602 (App. Div. 2001) (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597 (1988)).

Defendants advance two arguments in support of their motion. First, Defendants argue that Plaintiff cannot meet his prima facie burden of proof because Plaintiff cannot demonstrate that Bathurst or the Board perceived him as disabled or that he was performing his job at a level meeting Defendants' expectations. (Def.'s Br. at 36.)  According to Defendants, although Bathurst was concerned about Plaintiff ability to return to the classroom based on Plaintiff's statements about his physical and mental condition, there is no evidence that Bathurst viewed Plaintiff as suffering from a disability.  (Id.)  Moreover, according to Defendants,  Plaintiff's cannot prove that he was performing his job at a level that met his employer's legitimate expectations as the record is replete with instances of Plaintiff's insubordinate behavior and his failure to improve his job performance despite

repeated warnings.  (Id.)  Second, Defendants argue that, even if Plaintiff could meet his prima facie burden of proof, Plaintiff cannot demonstrate that Defendants' actions in requiring a return-to-work physical and choosing not to renew his contract for the 2003-2004 academic year are a pretext to unlawful discrimination.  (Id.)

The Court must deny Defendants' partial motion for summary judgment with respect to Count IV because issues of material fact exist regarding (1) whether Bathurst perceived Plaintiff as disabled (in particular, relating to his comments regarding Plaintiff as a danger to student safety) and (2) whether Plaintiff was otherwise performing the essential functions of his job.  Under the NJLAD, a plaintiff is deemed non-physically disabled if he has (or is perceived to have) "any mental, psychological...disability resulting from...psychological [or] physiological...conditions which prevents the normal exercise of any bodily or mental functions...."  N.J. Stat. Ann. 10:5-5(q)(2003).  Bathurst testified that he was concerned that Plaintiff's mental status rendered Plaintiff unfit to teach and, more seriously, a danger to students and staff.  Thus, from Bathurst's deposition testimony, Plaintiff may be able to establish that Bathurst perceived Plaintiff as disabled.  As such, it is clear to this Court that genuine issues of material fact exists regarding these issues.

Moreover, a reasonable jury could find that the reasons offered by Defendants for their non-renewal of Plaintiff's contract (e.g., that the Board had broad discretion to hire and fire and had questions about Plaintiff's fitness-for-duty) were merely pretext.  In the Third Circuit, to discredit the Defendant's proffered reasons for termination, Plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact-finder could rationally find them 'unworthy of credence,'...and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)); see also Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000).  Indeed, Plaintiff points out weaknesses in the Board's stated reasons for non-renewal including testimony from McMullin and Earling stating one reason for non-renewal was "excessive absenteeism" when Plaintiff claims his only extended absence was when he took his FMLA leave.  In addition, Plaintiff identified the inconsistency where his termination letter stated based on observation/evaluation reports, but Plaintiff cites evidence that all observation reports were positive.  (Hildebrand Aff., Ex. D, Observation Report, 10/2/03).  Thus, viewed in the light most favorable to Plaintiff, there is ample evidence that

the purported criticisms of Plaintiff's job performance were a mere pretext to mask unlawful discrimination and therefore, summary judgment should be denied.

## VI.  CONCLUSION

For the reasons set forth above, this Court will grant Plaintiff's motion for partial summary judgment and deny Defendants' cross-motion for partial summary judgment regarding Count I because (1) Plaintiff's leave was protected under the FMLA and (2) Defendants interfered with Plaintiff's rights under the FMLA when conditioning Plaintiff's return to work upon Plaintiff's completion of a fitness-for-duty evaluation made by the school district's doctor.[17]  The Court will also deny

---

[17]  A number of courts outside of this jurisdiction have held that an employee who was denied his or her rights under the FMLA and entitled to backpay and other elements of damages but is nonetheless required to mitigate his or her damages.  See Edwards v. School Bd. of City of Norton, Va., 658 F.2d 951, 956 (4th Cir. 1981); Sherman v. AI/FOCS, Inc., 113 F. Supp. 2d 65, 79 (D. Mass. 2000); Miller v. AT&T Corp., 250 F.3d 820 (4th Cir. 2001); see also Deborah F. Buckman, Annotation, Award of Damages Under Family and Medical Leave Act (29 U.S.C. §§ 2601 et seq.), 76 A.L.R.Fed. 591 (2005).  The Court in Edwards noted that "[a]n improperly dismissed employee may not remain idle and recover lost wages from the date of discharge....[rather] [t]he employee must make a reasonable effort to find other suitable employment." Edwards, 658 F.2d at 956.  Thus, if the employer comes forward with evidence that the plaintiff did not exert reasonable efforts to mitigate damages, the court may limit the employee's backpay. The employer bears the burden of presenting evidence regarding mitigation of damages.  See 76 A.L.R. 591. "Whether a plaintiff is entitled to damages, and in what amount, are questions of fact" that must be determined by the factfinder.  Id.; see also Viereck v. City of Gloucester City, 961 F. Supp. 703, 709 (D.N.J. 1997).

Defendants' motion for partial summary judgment as to Counts II
and IV as genuine issues of material fact exist regarding
Defendants' motivations for terminating Plaintiff.


**June 28, 2006**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     United States District Judge